all right, Mr. Stephens. Good morning, and may it please the court. Duncan Stephens, on behalf of the Federal Deposit Insurance Corporation, as receiver for the Bank of Union. I'd like to first start by addressing why we believe it is the FDIC, not Eleanor Cattle, that is entitled to recover the proceeds of Mr. Dobbins' insurance policy, and then briefly at the end turn to the amount of that policy and why we believe that the insurer's request to reduce the amount of the policy has no merit and is untimely. But let me start with the question of which party is entitled to recover the amount of the policy. Mr. Dobbins assigned his insurance policy to the Bank of Union as collateral to secure a loan from the bank. He received the benefits of that assignment, the loan was extended, and that assignment was valid under Oklahoma law, because all Oklahoma law requires for an assignment is that the party's intent be clear. The assigner's intent is clear, the party's intent is clear. That was clear on the face of this assignment. There's no dispute that this assignment was more than sufficiently clear and formal to satisfy Oklahoma law. So the question is whether a paperwork provision in the policy dealing with the procedure for notifying the insurer of the assignment affected the validity of the assignment, and it did not. What that paperwork provision said was, you may assign this policy. We, the insurer, are bound by an assignment only if we receive a duplicate of the original assignment at our executive office. It went on to say, if an assignment is collateral, the collateral assignee has priority over the interest of any revocable beneficiary. The significance of that provision does not go to the validity of the assignment. It goes to whether the insurer is bound by an assignment. It protects the insurer in the event it doesn't receive notification of an assignment. It pays someone else, like a beneficiary. The assignee later sues to say, hey, you should have paid me. And the insurer is entitled to look at this provision and say, no, we didn't have to pay you because you didn't notify us properly. But none of that happened here. This insurer filed an interpleader action. It deposited the funds with the court and asked the court to resolve who was entitled to recover the proceeds. It took steps to make sure that this wouldn't happen, that it wouldn't need to invoke this provision, and thus the paperwork provision of the policy just has no bearing on this dispute. It doesn't affect the validity of the assignment. And courts, including this court, have drawn a distinction between policy language that conditions the validity of an assignment or a beneficiary change on insurer acceptance or consent or notification and this type of language, the language that simply protects the insurer. So this court in Banco Fidelio, where the policy said, to be binding on us, an executed assignment must be by written request. This court said the policy, quote, does not require USAA's consent, the insurer's consent, to make an assignment. Rather, it only requires its consent for the assignment to be effective against it. And many other courts have recognized this distinction and have understood that this type of language just doesn't bear on whether an assignment is valid. And by the same token, because this provision is there to protect the insurer, no one other than the insurer has standing to invoke it. And that's what the Oklahoma Supreme Court said in the Alkire v. King case. The court there said, the rule is well established that the provision in the policy requiring approval or acceptance of the assignment is for the sole benefit of the company. You pressed Alkire to Judge Fitzwater. He had it, and I guess the two cases were kind of in play. So he distinguished it. So where do you go wrong? Two points there, Your Honor. Judge Fitzwater believed that Alkire was distinguishable because the estate, the insurance estate, was named as the beneficiary. But that actually does not distinguish that case from this case. It brings that case closer to this case. And the reason was, it was common at the time for policy language to give beneficiaries priority over assignees rather than the reverse. So what the Alkire court said was, since the policies here involved were payable to his estate, Nova E. Alkire had the absolute right to assign and transfer them. In other words, because there was no third-party beneficiary, no beneficiary's consent was needed for the assignment. That's true here as well, not because the estate was the beneficiary, but because the policy itself says so. The policy says, you may assign this policy. The collateral assignee has priority. So the fact that the estate was the beneficiary in Alkire affected the assignability of the policy, but it did not speak to the effect of the insurer notification provision. That's an entirely separate issue, and the court did not suggest in Alkire that the status of the estate is beneficiary and bore on that issue. And now Judge Fitzwater relied heavily on a case called Lewis out of the Oklahoma Supreme Court in 1918. But the Lewis case does not control here for three reasons. First, the policy language in Lewis was very different. That policy said, any assignment hereof must be made in duplicate on blanks furnished by the company. Both copies with this policy must be sent to the home office. And the Oklahoma Supreme Court viewed that as a condition on an assignment, not a mere insurer protection provision. The second reason Lewis is distinguishable is that even if this were, even if this policy language were like this, if it were just an insurer protection provision, the insurer was a party there. The insurer had been sued. So this language had lots of significance in that case because it protected the insurer, but the insurer doesn't need to be protected here because it hasn't been sued. It is not, it's not facing liability for this, for these proceeds. And the third reason Lewis is distinguishable is that there was no valid assignment at all in Lewis. What we're arguing is that when there's a valid assignment, it is not invalidated by this type of language, but the assignment didn't take effect at all in Lewis because there was a mere pledge by transfer of possession. The pledgee forfeited the property and the court said, there is no assignment here at all. This assignment didn't go into effect. They said there was no valid assignment of the policy. So for several reasons, the Lewis case is not controlling here. The closest case in Oklahoma is the Alkier case. On that case, in many respects, it's extremely close to this case because there was an assignment, the court declined to give effect to a, declined to rely on an insurer notification provision. It found the assignment valid. The assignment was actually much less formal than in this case, and the insurer actually paid the beneficiary rather than the assignee, and yet the court said, this insurer notification provision simply doesn't matter. It does not control here. Now the district court, Judge Cutsquadder also found that L&R took a vested interest in this policy, but the district court was incorrectly assuming that the assignment could not go into effect unless the insurer notification provision were waived, but that's not the case. As we've been discussing, the assignment was valid when it was executed. It needed no further acts. It needed no acceptance, recognition, waiver by the insurer to be effective. And thus, under the Glass case, a collateral assignee takes a vested interest in an insurance policy upon an assignment, and if there was a vested interest in anyone, it was the Bank of Union, to whose interest the FDIC has succeeded. L&R could not have a vested interest in this policy. It could not take a vested interest upon Mr. Dobbins' death because it was the bank that held the vested interest, up to the amount of the indebtedness which exceeded the full amount of the policy. So for these reasons, we believe that it's the FDIC that is entitled to recover the amount of the policy here, and that the district court erred in holding that L&R as the beneficiary was entitled to recover. I'm happy to turn to the amount of the policy unless there are further questions on who is entitled to recover on the policy. Why do you push so hard on the amount of the policy from the standpoint that I know your argument is that the error was the insurance company's error, the agent or somebody, you got the date wrong, and so on and so forth. But, I mean, is that enough? It is enough, Your Honor, because courts in this scenario have looked to whether it was the insurer that made the error or whether it was the insurer that made the error, and I've recognized that this— I mean, it was an arithmetical error that nobody disputes. You know, his age was what it was. Right. So, you know, though done by the, you know, the agent or whatever, it was time to pay. In other words, putting aside your other arguments about, you know, the insurance company assignment, et cetera, in this case, it's the insurance company who pays it off. So, I think you argued or time-barred or some other arguments. I mean, what's your strongest argument for why the company can't reform or otherwise pay off based on the real facts? Well, let me turn to the timeliness argument. It's—there's no question that the insurer, the insurer's predecessor—it was the insurer's predecessor that made the error, Valley Forge, knew of these facts in 1999, and it didn't bring an action. It didn't do anything to secret a change in the policy until 2016, 17 years later. The Oklahoma statute of limitations for a contract reformation action or, indeed, any other—any kind of contract action is five years. So this action was clearly untimely under the statute of limitations. And while Jackson National has argued that the statute of limitations doesn't apply here, they're relying on a statutory provision that merely deals with the effect of an incontestability clause. And we're not arguing an incontestability clause. So an incontestability clause imposes a two-year limit by Oklahoma statute on actions to contest the policy. Oklahoma law, Section 4015, has said this kind of—an age adjustment request, a request to change the amount of a policy because of an age adjustment, is not within the scope of an incontestability clause at all. And that's fine. We don't—we're not disputing that. But the only effect of that statute is to take this—is to take this out of—take this sort of request out of the incontestability clause. It does not in any way displace the underlying statute of limitations, which for a contract action is five years. And even if no statute of limitations applied, the doctrine of latches bars the insurer's request to change the amount of the policy. Because latches in Oklahoma requires an inexcusable delay in knowledge, full knowledge of the true facts, with prejudice to another party. There was 17 years of delay. That's more than enough in Oklahoma. There's no question that the insurer knew the true facts all along from the time the policy was issued. And there was prejudice to the FDIC. There was prejudice to the bank and the FDIC because the bank issued—issued a loan, loaned Mr. Dobbins money, relying on collateral that was worth substantially less than the face amount. So that's why we believe, as a timeliness matter, the insurer is not entitled to change the amount of the policy. As far as the merits of the request, courts looking at this type of issue have distinguished between—distinguished between an insured and insurer making a request and acknowledged that when the insurer has made the error in the first place, where the insurer misstates the facts, it is stuck with what its own agents did. Many courts have recognized that, and Oklahoma courts have recognized this, not in the context of an age adjustment provision, but in the context of other types of provisions, where, for example, the policy indicates that the—the policy indicates that the insured is in good health. The insurer comes in and says, we have a defense to payment on this policy. The insured was not in good health. And the courts say—Oklahoma courts have said, you, the insurer, had the power to and did send a medical examiner to ascertain whether this insured was in good health. If you didn't catch that, that's your problem. So there, like here, it was the insurer's errors, it was the insurer's omission that led to—that led to the problem that the insurer is trying to correct. And consistently, courts have said, insurer, this is on you. This type of provision is there to protect you against misstatements brought by the insurer. What about gotcha? Your Honor, it's—it's—the insured—the insurer knew this at the time. If they didn't fix it, our position is that they are stuck with the problem. It's not a—we don't do it as a gotcha so much as not doing—if you didn't do your homework, you can't come in 17 years later and say, Judge, can we fix this policy, particularly when someone has been prejudiced in the interim. So is it uncontested who made the error in this case? It is uncontested. It was uncontested below. It's been uncontested on appeal. The insurer's notes reflecting its—its realization that the date of birth was incorrect appear at page 513 and 514 of the record. Those are dated prior to the issuance of the policy, and yet the policy went out with the wrong—with the wrong age. Well, Judge, Fitchwater relied on the Oklahoma statute that you're familiar with, that it said, the final part, that the incontestability clause shall not preclude adjustment at any time, at any time, of the amount payable or benefits accruing on the policy for misstatement of age. I mean, that's the statutory language from Oklahoma. That seems to be saying that if it's discovered at the time of death that the insurance company can—can adjust at that time. Why isn't that sufficient? Because, Your Honor, what that statute is—what that statute says is, nor shall it be construed, and it is the incontestability clause to preclude adjustment at any time. We're not asking incontestability clause. I understand, but you're tying it strictly to the incontestability clause, and what Judge Fitchwater seemed to be saying, and as a fair reading of the statute, seems to me that absent the incontestability clause, this can be contested at any time, including, it seems to me, when it's—if it's discovered at the time of death or—I mean, until the payments are made, it seems to me that that's leaving open the opportunity to adjust. I mean, what's—I mean, you're trying to apply a statute of limitation on top of what seems to be an open-ended right on the part of the insurance company. So we'll have to deal with it. You're tying it. Well, Your Honor, the reason we think this is the right way to read the statute is that nothing in this provision is talking about a statute of limitations at all. It's simply talking about what the scope, what the ambit of an incontestability clause is. And had the Oklahoma legislature intended also to displace the statute of limitations, we think this more likely would have read, nor shall it or any other provision of law or any other time limit, something like that. We think it more likely would have been more broad to indicate more clearly that the statute of limitations is displaced. It's—and this is not a situation where there's sufficient clarity in the statute for implied repeal of another statute. All right. My time is up. I would like to reserve the balancing time for a vote. All right. Thank you, sir. We have your argument. All right. Mr. Todd. Your brief just kind of came out with both barrels. Well, Your Honor, this— It was a lively brief, obviously. I appreciate that. This is an important issue for my client. Your Honor, we represent L&R Cattle, LLC, which is the successor by merger to Dobbins Enterprises of Thomas. We've been the beneficiary on this policy since October of 2001. The life insurance policy was issued to Larry Dobbins in 1999 in Oklahoma. I think it's undisputed that Oklahoma law applies. Originally, Larry's wife, Linda, was the beneficiary, and then it was validly changed to Dobbins Enterprises, now L&R. After—I think it's notable that after Larry Dobbins fell into financial difficulty, Lance Dobbins, the owner of the policy and the principal of L&R, asked Jackson National to confirm the details of the policy. And by letter in November of 2015, Jackson National submitted a memorandum of insurance that's in the record at 389 that confirmed Larry Dobbins was insured, Lance Dobbins was the owner, and Dobbins Enterprises was the beneficiary. Notably, Jackson National did not acknowledge, mention, or reference an assignment to Bank of Union. Counsel, let's look at it another way. What legally, as purely a question of law, minimally, what would Mr. Dobbins have had to do to assign the policy to the Bank of Union? Well, he— Notwithstanding any provisions of the policy, the paperwork that needs to be filed with the insurer, what would constitute an assignment under Oklahoma law? Right, and I think the Oklahoma cases that are cited show that it's very easy to tender an assignment. In fact, one of the main cases dealt with an oral assignment. So I think minimally, it would need to be an assignment in writing. But the key in this case, and the key that FDIC ignores, is that while they rely on the Alcar case, they ignore that Lewis is also good law, and it remains good law. And they're different. And, Your Honors, and so we deal with two different scenarios. The Alcar case specifically was limited to where the policy, where the dispute was between an insurer who left it to his estate. And if you look at every case that cites Alcar, they reference that limitation in Alcar. Now, that's very different than in Lewis. And the best way to find and distinguish between Lewis and Alcar is the substance of the Alcar decision cites to the Chartrand, Massachusetts case. And if you pull the Chartrand case, which is very important, the Chartrand case distinguishes these exact same scenarios. On page 296 of the Chartrand decision, it talks about the form of assignment has been held to be sufficient to constitute a change of beneficiary when such beneficiary was a third person, unless contrary to express terms of the policy. So that's the Lewis case. And then, just a couple sentences later, it says, the case at Barr, which is Chartrand, presents a different situation from that disclosed in either of those decisions. No third party had an interest in the policy. It was payable to the estate of the insured. A living person has no heirs. The estate of the testator as beneficiary of the policy in the event of his death had not come into existence. That's Alcar. And so it goes on and it references basically the Lewis scenario again and says if any third person is a named beneficiary, that interest is superior unless the beneficiary is changed in accordance with the policy. So there's these two different scenarios under Oklahoma law. And I think the key here, it really comes down, and Judge Fitzwater did a great job of analyzing it and probably pulling some things that we didn't realize at the time of that briefing. But you have Lewis, which is good law. You have Alcar, which is good law. Plus you have the statute, which is 36364, whatever the statute is. Sorry, I've got it here. That 3634, which was notably adopted in 1957 after Alcar. And it basically is consistent with Lewis that says a policy may be assignable or not assignable as provided by its terms. But then it goes on, looking at that last night, subject to its terms relating to assignability, basically a life insurance policy may be assigned. And so the key holding, and Judge Fitzwater picked up on this, and I think he's 100 percent right under the current status of Oklahoma law is that the Lewis case held that where a life insurance policy contains a provision setting forth the method and manner and steps necessary to be taken to change the beneficiary, such provision is controlling and a valid assignment of the policy cannot be made except as provided in the policy itself. But the language, I mean, as FDIC argues, though, that would be true if the insurance company was still holding on to the money or they're at risk of giving the money to the wrong person or whatever. So in the, I mean, what you say the case says, it says that. But in that case, you know, the holder of the money was still in play. When the money has been interplayed, you know, like we don't care who gets the money, there it is. So the policy says you've got to send us duplicate originals in order to be valid against us, body, body. So if they were still holding the money, clearly, no duplicate original, none of that happened in this case. But whereas here, they interplayed the money, so the insurance company is not in a spot of saying, you know, you didn't give us a duplicate original. So in Lewis, you have a situation where it holds, you know. The insurance company is saying you didn't do this, therefore, King's X. So I'm just trying to get you to hone in. I hear you saying, yeah, they're both good cases, they're good laws, but, you know, the subtle difference. I mean, the question is, isn't the interpleader here a significant factor in terms of the positioning of the parties, vis-a-vis what can operate for or against them? Because neither one of Al-Qaeda or the other deal with interpleader. Certainly Jackson Eshel is not fighting for the money. Right. I think the key is that at the time of the interpleader, LNR was vested in that policy as the beneficiary, and as of the time of death, there had been no valid assignment pursuant to the policy. There hadn't been a valid assignment vis-a-vis what the insurance company required, because there had been no duplicate originals and all that. Nobody denies that. But isn't that asked to the insured and the company who's holding the money? Well, I think that if- In other words, how does one-what's the best case that says that if there's any provision in the contract, you know, dealing with assignment, you know, if it's noncompliant, King's X, I mean, I'm just having trouble seeing how the fact that the money's been interpleaded does not sort of vitiate, you know, that requirement. Well, I think you have to tie really the three cases. It's Lewis. It's Alcar. It's Chartrand. And then you tie in the statute, the specific Oklahoma statute that doesn't apply in any of these other out-of-state cases that says that subject to the terms relating to assignability, then a life insurance policy may be assigned. So in Oklahoma, and Judge Fitzwater picked up on that statute, I believe, but it certainly links-no, I'm sorry. Actually, Judge DeGiusti in this unreported case that they had cited picked up on that and linked that statute to the ability to assign. I really think that's the issue, Your Honor. There's no other case that is right on point. They argue that Alcar is the most relevant case. I would say if you look at Chartrand, you can tell Alcar really is not applicable to our case other than setting forth some, you know, basic tenets of life insurance policy assignability. As to the facts and situations of this case, you really have to tweak between Lewis, Alcar. You have to fold up Alcar and see what it was relying on, and you can see that the Chartrand case actually distinguished between these two exact scenarios. Counsel, let me ask you another question, a pure question of Oklahoma law. When does an assignee become vested? You use the term vested insofar as your client is concerned. Just put aside insurance policy or property in general. If there's an assignment made, when does the assignee become vested? With regard to this life insurance policy, if the terms require it to be accepted or the terms of the policy require a method for it to be, they don't become vested until it's accepted by the life insurance policy. And that's what Lewis says. It says a valid assignment of the policy cannot be made except as provided in the policy itself. And so I think generally if you're just dealing with contract rights, it's immediate upon assignment. If you're dealing with a life insurance policy where you have the insurer in place, under Lewis, under that particular language, it doesn't become valid. So they weren't vested. They've never been vested, and that's why Judge Fitzwater awarded the money to Eleanor. It really is a unique case. It ties down and goes back to that old saying, it's long been the law, right? Thank you, Your Honor. Unless there's additional questions, I'll yield my time. All right. Thank you, sir. All right. Ms. Clark. May it please the Court, good morning. I'm here for Appalachian National Life Insurance Company. At issue here is an age misstatement provision, and it's required by Oklahoma legislature section 4006 to be put in every single life insurance policy. And it allows the parties to adjust the policy benefits to reflect what the premiums paid would have purchased based on the correct age of the insured. Here the insured was one year older than stated on the application, and Jackson National adjusted the policy proceeds accordingly. He says it's your mistake. That's right. And you waited too late to figure out that you made the mistake. Therefore, pay up the full amount. That's right, and we do not dispute that it was our mistake. But I will tell you, Your Honor, why that is not important to this case. And number one is the policy language itself. It is fault neutral. It applies to any age misstatement, up or down. And that means that if the beneficiary had been a year younger, then we would have to adjust the policy proceeds up. The statute and the policy language are aimed to protect both the insurance company and the insurer. Wasn't the insurance company, though, in possession of a correction? Wasn't it made clear that that date was in error way back at the time the policy was placed? Is that correct? Yes, that is correct, Your Honor. Was that Mr. Dobbins who made the point of saying, oh, by the way, that's not my real birthday, this is the actual date? I'm not sure that Mr. Dobbins said that, but I do admit that the insurance company was aware of the misstatement. Okay. However, there is no qualification in the policy language. It does allow an age adjustment at any time, as does the statute that you pointed out, Judge Southwick. Section 4015 says an incontestability provision does not limit an insurance company's ability to adjust the policy benefits based on the age. Why wouldn't the standard statute of limitation for contracts apply? If you want to change your obligation, you have a certain period of time, Oklahoma says. Why wouldn't that be applicable? Well, one, because we're not changing our obligation. The contract language allows us to adjust it at any time. However, even if a statute of limitations applies, let's assume that the five-year statute of limitations does apply, there was no ripe or justiciable issue that Jackson National had until the FDIC decided that it was not going to allow us to adjust the policy proceeds. That's when we had an issue when the FDIC contested the contract language, and at that point Jackson National immediately filed a declaratory judgment action shortly after the insurer's death to have the court decide the issue and to say that the contract language as written was enforceable. The FDIC, they rely on cases. All of them that they've cited are inapplicable for two reasons. Number one, they are all involved, the insurer, the insurance company, trying to completely void a policy and only return the premiums paid based on an age misstatement. And that's not what Jackson is trying to do here. Jackson is simply trying to enforce the contract provision as written that Oklahoma law requires that it put in the policy. And the second reason the cases are inapplicable is because they all predate Section 4015, where the Oklahoma legislature reconciled the dispute and the conflict between an incontestability clause, which does not allow for an insurance company to change the contract after two years, and an age misstatement clause, which allows the insurance company to adjust the policy proceeds. The Oklahoma legislature clearly resolved this conflict, and it says that we can make an age adjustment clause, we can make an age adjustment at any time despite incontestability time limits. And that's precisely why the FDIC has not been able to cite any case after 1957 in which a court did not enforce an insurance company's age adjustment clause, regardless of fault. And the counsel just stood here and admitted that there are no cases in the context of age adjustment in Oklahoma, and the reason for that is because this is a no-fault provision and that has already been decided in Section 4015. That issue is no longer going to come up. What does the insurance company have to do to make the adjustment? Once they're put on notice that a date is in error, what is it that they have to do to not get into this calculation, or I should say recalculation? I'm not sure I understand the question. So the date is erroneously written down, all right, by one year it's off, and then the insurance company soon thereafter, by whomever, is put on notice that that's not the actual birth date. What is it that the insurance company has to do in reaction to that in order to make the correction that apparently wasn't done in this case? Well, at the time that the policy proceeds become payable, because the contract language says we will adjust the policy proceeds. I understand that part. What I'm saying is once the insurance company is put on notice, do they need to take some action to make a correction, or can they just say, oh, no, no, thanks for the information, but the error has been made, and years from now you're going to pay for that error? Well, Your Honor, the contract language states and the statute states that before the policy proceeds become payable, that's when the age adjustment must be made, and I would say that the insurance company is not obligated to do anything prior to the amount becoming payable. In the insurance company you mentioned earlier, I think one of your arguments in your briefing here today was that, well, if it had operated to the benefit of the insured and we would have to pay more if there was an error made, then so be it. Can the insurance company make a correction if the insured puts down the wrong age inadvertently, not fraudulently, but inadvertently the wrong age is written down? Can the insurance company at some point during the pendency of the life of the insured go in and say, well, wait a minute, let's get this straight. We're correcting the birth date because we don't want at the end of the day when the person is deceased, we don't want to have to pay more than what we're on the hook for. It's a whatever amount of policy, and we're not paying more than that, so we're going to make a correction now. Can the insurance company do that, or are they precluded from doing that? No, I believe the insurance company can make that adjustment at that time based on the language that it can be done at any time. Okay, well, that answers my question then. The insurance company could have, when put on notice way back when that Mr. Dobbin's birthday was wrong, they could have made a correction then so as to not deduct upon his death. Yes, Your Honor, they could have, but that's their contract language and their right to invoke at any time. And I will leave it there. It's their right to do it any time. His last argument was about latches. Did you say anything about that? Well, Your Honor, if Jackson National has not run afoul of any statute of limitations, it certainly has not run afoul of any latches argument. In order to have latches under Oklahoma law, there has to have been an unreasonable delay in the commencement of proceedings to enforce the claim, and here Jackson National had no claim until the FDIC contested its right to invoke the contract provision. All right. Thank you. Mr. Dobbin. Back to you, Mr. Stevens. Thank you, Your Honor. I have a few brief points on rebuttal. I'd like to start with who is entitled to recover on policy. LNR has relied on the Chartrand case. The Chartrand case, like the Elkhire case, was a situation where the beneficiary had priority over the assignee, and ordinarily if there was a third-party beneficiary, there could be no assignment without the beneficiary's consent. In that scenario, because the estate was the beneficiary, there didn't have to be that consent. That was the distinction that the Chartrand court was drawing. It was not speaking to insurer notification issues at any time. That was not an issue in Chartrand. Second, let me quote you some of the Oklahoma cases by way of showing the difference between the language here, the difference between language that conditioned the validity of an assignment on insurer acceptance and what we have here. Carson v. Carson. Here's the policy. Every change of beneficiary must be made by written notice to the company for endorsement of the change they're on by the company. And unless so endorsed, the change shall not take effect.  company. The Harjo case. Under the policy, quote, the consent of the secretary of the interior was required before the insurer could borrow money on the policy or reinstate, surrender, or assign the same. Lewis, any assignment hereof must be made in duplicate on blanks furnished by the company. All of that language is very, very different. It could hardly be more different from the insurer protection that we are not language that we have here, that we have in the Banco Popular case. In the bankers' health care case, there is a clear distinction in the law. Many courts have recognized this distinction, and this court's decision in Banco Popular has a very good explanation of that. It's a non-binding decision, but it is, I think, a very persuasive account of this very distinction. And I've talked about the Lewis case, but Lewis talked to, Lewis viewed these steps as necessary to be taken for an assignment to take effect, and I've explained why that's very different from here. Turning to the Mountain, I'm sorry. You may have addressed it, but let me make sure it's done in the context of what your friend on the other side said. He indicated that this Oklahoma Statute 36-3624, which has terms in it about subject to terms relating to assignability, any life insurance policy can be assigned. He's trying to say that was a reaction to the initial case law in Oklahoma, and is trying to make sure that the terms of insurance policies for assignments are followed in all cases. That seems like a pretty heavy weight to put on that language. Do you have any particular interpretation of this statute that you can give us as to what it is doing, how it relates to our issue? Your Honor, I think this statute is confirming that an insurance policy can be assigned, and there was some prior case law, mostly out of State, but there is some prior case law, we've said in our brief, that indicates that there is no power for an insured to assign an insurance policy. So I think this statute is underscoring that there can be an assignment and that the policy can set the terms of assignability. But it certainly does not speak to the distinction, doesn't speak to what terms make a policy assignable under what circumstances. It simply establishes the background fact that insurance policies can be assigned. So we don't think it answers any question that's before this Court, because there's no dispute that this policy can be assigned. It said it can be assigned. I mean, there was an insurer notification provision, and the dispute is whether the meaning of that provision, and we submit that it doesn't mean what L&R is citing it for. On the amount of the policy, Oklahoma courts have looked to equally fault-neutral clauses and have found and have denied insurers' attempts to adjust or avoid payment on the policies because of its own errors. So in Hearn, this is a case dealing with the health of the insured. The policy said, this policy shall take effect on the date of issue, provided the insured is then alive and in sound health, but not otherwise. There's nothing there about if the insured misrepresented his health, what the insurer knew about it. That was read into this policy. And Oklahoma courts have consistently done that. They've consistently read fault-neutral clauses in a policy, understanding that they're there to protect the insurer against misstatements by the insurer. There was no misstatement here. And furthermore, the cases that we've cited are not all about avoiding the policy. Many of them deal with age adjustments, as our briefs set out. I am out of time here. We ask that the Court reverse Judge Fitzwater's judgment and rule in favor of the FDIC, rule that the FDIC is entitled to recover the full amount of this policy. All right. Thank you. We have your argument. Do you counsel on the other side? Interesting case, to say the least. We're happy to learn Oklahoma law when we can. Speak for yourself. With that, the case will be submitted. Before we call the third case, we'll take a look.